CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 FEB 24 PM 3: 47

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| PAULA SUE GRAVES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:14-CV-188 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff PAULA SUE GRAVES brings this cause of action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's applications for disability benefits and supplemental security income benefits (SSI). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

## I.
## PROCEEDINGS

On or about August 12, 2011, plaintiff Paula Sue Graves protectively filed applications for disability insurance benefits and supplemental security income benefits alleging a disability onset date of July 1, 2011 due to anxiety, depression, mental retardation and foot problems. (Tr. 25, 28, 153-161, 184). The Commissioner denied benefits initially on November 28, 2011 and upon reconsideration on April 10, 2012. (Tr. 25). Upon plaintiff's request, a video hearing was held

before an Administrative Law Judge (ALJ) on February 1, 2013. (*Id.*). On the date of the hearing, plaintiff was 48 years old and had a high school education. (Tr. 33). She had past relevant work as a cake icer, which is a light and semi-skilled job, a cake decorator, which is a light and skilled job, a daycare worker, which is a light and semi-skilled job, a kitchen helper, which is a medium and unskilled job and a storage facility worker, which is light and unskilled work. (Tr. 79-80). On May 8, 2013, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 22-37). Following plaintiff's unsuccessful administrative appeal of the ALJ's decision, plaintiff sought federal judicial review.

In reaching his decision, the ALJ followed the five-step sequential process in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 27). At step two, the ALJ found plaintiff's borderline intellectual functioning, major depressive disorder and foot problems were severe impairments. (Tr. 28). At step three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28-30). Specifically, the ALJ found plaintiff did not have an inability to ambulate effectively as required by section 1.02 for major dysfunction of a joint; found her mental impairments did not, considered singly and in combination, meet the criteria of Listings 12.02 and 12.04, (Tr. 28) and, while her representative argued she met the criteria for mental retardation under 12.05, the ALJ disagreed, finding she did not meet that listing. (Tr. 29). Plaintiff's impairments, singly or in combination with the other impairments, were not found to meet or equal a listing. (*Id.*).

The ALJ reviewed the medical records and the opinions in the record and found plaintiff's

testimony not to be credible to the extent it contradicted the ALJ's residual functional capacity (RFC) finding. The ALJ gave great weight to the State agency consultants, including the psychological consultant, who concluded plaintiff retained the RFC to perform medium work. (Tr. 32). The ALJ determined, based on the entire record, plaintiff retained the ability to do work that allowed her to alternate between sitting and standing, that was limited to simple tasks with simple judgment making and that included no jobs involving reading due to her mental health condition and borderline intellectual functioning. (Tr. 32-33).

At step four, the ALJ found plaintiff could not return to her past relevant work as a cake decorator/hand icer, daycare worker, kitchen helper or storage facility helper. (Tr. 33). At step five, based on the RFC determination and the Vocational Expert's (VE) testimony, the ALJ found plaintiff was capable of performing other jobs existing in significant numbers in the national economy at the light exertional level and classified as unskilled including maid/janitor, hand packager and inspector. (Tr. 34). Accordingly, the ALJ found plaintiff was not under a disability at any time between July 1, 2011, the alleged onset date, and May 8, 2013, the date of the decision.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial

evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

### III.
### ISSUES

The ALJ found plaintiff not disabled at step five of the five-step sequential analysis. Consequently, the court's review is limited to whether there was substantial evidence in the record, taken as a whole, to support the finding that plaintiff had the ability to perform other work that exists in significant numbers in the regional and national economies, and whether proper legal standards were applied in making this determination. Plaintiff presents the following issues for review:

1. The ALJ's RFC determination was not supported by substantial evidence because he failed to consider all of plaintiff's severe impairments and the

        combination of her impairments;

2.     The ALJ's credibility assessment was not supported by substantial evidence because he erred in considering the required factors and improperly faulted plaintiff for her inability to afford medication and treatment;

3.     The ALJ's step five determination was not supported by substantial evidence because he erred in relying on vocational testimony based upon an incomplete hypothetical question and failed to develop the record as required.

(Pl. Br. at 1).

## IV.
## MERITS

### A. *ALJ's RFC Determination*

Plaintiff challenges the ALJ's determination that she is capable of performing light-level work with a sit/stand option. Plaintiff contends the determination is not supported, "... by substantial evidence because the ALJ failed to accommodate for plaintiff's severe impairment of depression or her diagnosis of anxiety." (Pl. Br. at 8). In response to that claim defendant refers to the ALJ opinion wherein the ALJ determined plaintiff suffered from the severe impairments of borderline intellectual functioning, major depressive disorder and foot problems. (Comm'r. Br. at 5 citing Tr. 28).

Plaintiff argues she sought treatment for her generalized anxiety disorder and medical professionals determined it was necessary for her to be on medication. (Pl. Br. at 8). Specifically, plaintiff refers the Court to a report signed by Dr. Salil K. Trehan, M.D. on July 10, 2011. (Tr. 236). The July 2011 report appears to be a follow-up of a June 2011 appointment where the doctor prescribed the medication Cymbalta for depressive disorder and generalized anxiety disorder. (*Id.*). In the July report, the doctor ordered the medication to be refilled. (*Id.*). Plaintiff also refers to the psychiatric review performed by medical consultant Dr. John Ferguson on October 18, 2011. (Pl.

Br. at 8). While plaintiff argues Dr. Ferguson found plaintiff's anxiety disorder to be a medically determinable impairment, plaintiff concedes the doctor found insufficient evidence to provide a detailed opinion. (Pl. Br. At 9 citing Tr. 248).

Both parties refer to a mental health assessment conducted by psychologist Ken McTague, Ph. D. on March 27, 2012. (Pl. Br. at 9; Comm'r. Br. at 5 citing Tr. 268-272). Plaintiff argues that during an exam the doctor noted plaintiff exhibited anxiety symptoms including restlessness, tenseness and nervousness. (Pl. Br. at 9 citing Tr. 269). The doctor's actual diagnosis, however, did not include a diagnosis of an anxiety disorder. Dr. McTague's diagnosis was:

> AXIS I      315.00 READING DISORDER due to significant impairment in ability to pronounce and understand written words in relationship to predictions from IQ
> 296.33 MAJOR DEPRESSIVE DISORDER, RECURRENT, SEVERE WITHOUT PSYCHOTIC FEATURES, due to depressive symptoms and their impact on her functioning
> AXIS II     v62.89 BORDERLINE INTELLECTUAL FUNCTIONING due to IQ in Borderline range...
> IX.         PROGNOSIS
> Prognosis for a change in her ability to read is poor due to chronicity and severity of her learning disability. If she could find a manual job with no reading required and suitable for someone with Borderline intelligence, her depression may lift partially. Additional medical treatment, by a psychiatrist, may lead to a reduction in her depression since her current medication does not seem effective. Although her depression seems dominantly situationally triggered, she has a tendency to react to frustrations with depression.

(Tr. 270-271). Plaintiff contends the ALJ erred in failing to consider her medically determinable diagnosis of anxiety as a severe impairment. (Pl. Br. at 9). Plaintiff further argues that even if her anxiety was non-severe, the ALJ erred by not considering it in combination with her other impairments which were severe. (*Id.*). In his opinion, the ALJ states plaintiff's mental impairments (plural), considered singly and in combination, did not meet or medically equal the listing criteria. The ALJ found that plaintiff's severe impairments included borderline intellectual functioning, major

depressive disorder and foot problems. (Tr. 28). These findings rebut plaintiff's contention that the ALJ either ignored or did not recognize plaintiff's diagnosis of anxiety. A review of the administrative hearing transcript shows that plaintiff's counsel focused on plaintiff's complaints of depression at the hearing and did not present evidence or argument regarding anxiety. (Tr. 49-51, 58, 70). Nonetheless, in his opinion, the ALJ did refer to and consider plaintiff's allegations of anxiety and panic attacks. (Tr. 30). The ALJ recounted the medical evidence which noted plaintiff's mental status to be anxious and noted her complaints of anxiety. The ALJ noted the medical records reflected plaintiff's anxiety and that it was improving with medication and that by July of 2011, she had no further treatment for her mental health and was no longer taking medications. (Tr. 31).

This Court does not find the ALJ failed to consider plaintiff's anxiety. The ALJ discussed plaintiff's complaints of anxiety and referred to those same complaints and notations in the medical records. It appears to the Court that the ALJ did consider plaintiff's anxiety but found it to be minimal. It was not found to be a severe impairment. Although the ALJ may not have separately and/or directly addressed plaintiff's claim of an anxiety disorder, there is some evidence in the record that the ALJ recognized it and considered it. Further, the accommodations in the RFC for plaintiff's depression have not been shown to not also cover plaintiff's non-severe anxiety. Consequently, the ALJ's failure to directly address anxiety is not reversible. The psychologist, Ken McTague, did not include an anxiety disorder in his diagnosis. Whatever the significance of Dr. McTague's reference to anxiety symptoms was, it did not warrant inclusion in his diagnosis.

Plaintiff further argues the ALJ discounted Dr. McTague's noted problems caused by her depression. (Pl. Br. at 10). Plaintiff, however, does not challenge that the ALJ considered her depression to be severe and even notes the ALJ appears to have valued Dr. McTague's report and

opinion. (*Id.*). Nonetheless, plaintiff argues the ALJ erred in not detailing the limitations caused by plaintiff's depression in determining the RFC. (*Id.*)

Defendant counters that the ALJ's RFC finding contains adequate limitations due to the major depressive disorder. (Comm'r. Br. at 6). Specifically, the Commissioner states:

> The ALJ's RFC finding includes adequate limitations due to her major depressive disorder (Tr. 32-33)... The ALJ considered a Mental Residual Functional Capacity Assessment completed by State Agency medical consultant Jim Cox, Ph.D, who considered the record, including Dr. McTague's evaluation, on April 4, 2012, and determined that Plaintiff retained the "capacity to understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings" (Tr. 32-33, 289). The Commissioner's Programs Operations Manual System (POMS) explains that it is the narrative written by the psychiatrist or psychologist...that adjudicators are to use as the assessment of residual functional capacity... The role that State Agency medical consultants play in the disability evaluation process is discussed in Social Security Ruling (SSR) 96-6p, which provides that, "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180...The final responsibility for the determination of an individual's RFC and the ultimate question of whether an individual is "disabled" under the Act are issues reserved to the Commissioner. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining a claimant's RFC).

(Comm'r. Br. at 6-7). It has not been shown that the ALJ improperly failed to consider plaintiff's anxiety or her depressive disorder in combination with her other severe disabilities. The ALJ found major depressive disorder to be one of plaintiff's severe impairments (Tr. 31), and he explained that in considering the record as a whole, and all opinions found within, he gave great weight to the State agency psychological consultant who determined plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace as well as the ability to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, accept

instructions and respond appropriately to changes in routine work settings. (Tr. 32). The ALJ included those limitations in plaintiff's RFC and it is clear the ALJ made accommodations to plaintiff's RFC for her depression.

### *B. ALJ's Credibility Assessment and Plaintiff's Inability to Afford Medications*

Plaintiff next claims the ALJ erred in his credibility assessment because it was not supported by substantial evidence. (Pl. Br. at 10-11). Plaintiff first argues the ALJ discredited her when he determined the objective findings, "fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Pl. Br. At 11 citing Tr. 31). Specifically, plaintiff says the ALJ failed to recognize the medical evidence corroborated her statements regarding her foot problems and inability to read. Plaintiff refers to testing done by Dr. McTague which showed she had a Full Scale IQ of 75 (Verbal IQ 70 and Performance IQ 84), this, "overall performance placing her in the Borderline range of intelligence." (Tr. 270). On another achievement test, plaintiff scored the lowest possible score on word spelling and reading, placing her at the Kindergarten level. (*Id.*). The ALJ referred to plaintiff's testimony and the fact she said she cannot read and that her daughter has to do everything for her. (Tr. 30). At the hearing plaintiff testified that she could not read or spell names (Tr. 47), she found the fact she could not read embarrassing (Tr. 50), she could not read street signs but could use a landmark (a store or McDonald's, for example, to drive) (Tr. 52-53), she cleans with soap and water or whatever her daughter buys and tells her how to use due to her inability to read (Tr. 54), and she cannot fill out a work application without her daughter's help (Tr. 55).

As the Commissioner stated, the credibility of a claimant's testimony is the sole province of the ALJ. (Comm'r Br. at 7 citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)).

While that credibility determination must have evidentiary support, it remains that the credibility assessment is for the ALJ. In this case, the ALJ did not reject plaintiff's evidence that she suffered from foot problems and illiteracy. In fact, the ALJ allowed for plaintiff's illiteracy because all hypotheticals posed to the VE were restricted to jobs that did not involve or require reading. (Tr. 81-83). The evidence does not show the ALJ failed to take into account plaintiff's inability to read.

Plaintiff next avers the ALJ failed to consider objective medical evidence supporting plaintiff's allegations of foot pain. Plaintiff refers to a January 20, 2011 medical report of Dr. Paul Pearson who assessed her to have bilateral foot pain, posterior tibialis tendonitis, osteoarthrosis of the right foot, bilateral plantar fasciitis and metatarsalgia, and bunions and claw toes. The doctor instructed plaintiff to get custom orthotics and gave her arch supports and medication for the pain. (Tr. 230-231).

The ALJ, however, found plaintiff's foot problems to be substantial but not disabling. The ALJ included limitations in plaintiff's RFC for her foot problems. The ALJ referenced the medical record of Dr. Salil Trehan, dated July 8, 2011, wherein it was noted the patient was stable and was to continue with her present management of the problem. (Tr. 31, 236). Further, as argued by the Commissioner, the ALJ's RFC finding addressed plaintiff's foot pain since he included an option for plaintiff to alternate between sitting and standing frequently throughout the day.

At the administrative hearing, the ALJ questioned plaintiff about whether she could perform a potential job where she would be required to put a cell phone in a box *i.e.*, "You're packaging a cell phone." (Tr. 71). Plaintiff responded, "Yeah, if I didn't have to stand a whole,

long, long time, yes, sir." (*Id.*). Upon further inquiry, plaintiff explained that after standing on her bad foot for a long time and then sitting, she, "...can't get back up." (*Id.*). The ALJ then asked, "All right, so, if the job allows you to sit or stand, so if you wanted to sit you could , and so if you wanted to stand you could, do you think you could still do a job like what I described, putting a cell phone into a box?" (*Id.*). Plaintiff stated, "Yeah. Yes, sir." (*Id.*).

Contrary to plaintiff's allegation, it does not appear the ALJ failed to provide an accommodation addressing her foot pain. If plaintiff contends the ALJ committed reversible error by not including a limitation of an inability to stand after sitting for a period of time, such was a credibility determination within the province of the ALJ. There were no medical findings supporting plaintiff's testimony of such a significant symptom and as shown above, plaintiff testified she could perform a job with a sit/stand option.

Regarding plaintiff's mental health issues, plaintiff alleges the ALJ discredited her because she had not received treatment or taken medications since July of 2011. (Pl. Br. at 12). Plaintiff testified she no longer took medication because she could not afford it and argues it was improper for the ALJ to discredit her because of her poverty. (*Id.* Citing Tr. 51). Plaintiff is correct that the ALJ cannot find plaintiff's inability to pay for medication which would improve her condition, negates her alleged disability. However, as discussed by the Commissioner, in July of 2011, Dr. Trehan noted petitioner's mental status was normal mood and affect and she was active and alert. (Comm'r Br. at 8 citing Tr. 235). The ALJ noted this in his opinion. (Tr. 31). While the ALJ opinion did state that plaintiff had not been treated for her mental health since July of 2011 and no longer used prescribed medications (*Id.*), the ALJ also noted that in March of 2012, she could, "maintain her own medication." (*Id.*). Further review of the

referenced medical record, from Dr. Trehan, shows that plaintiff was taking medication for insomnia, and was taking Lexapro and Xanax for her depression/anxiety/panic disorder. (Tr. 235). While the ALJ noted in his opinion that plaintiff testified she took medication for two years until she ran out of insurance (Tr. 30), it does not appear the ALJ discounted plaintiff's allegations of disability because of her poverty or inability to afford medication. Rather, it appears the ALJ considered plaintiff's claims of disability after giving great weight to the State agency consultants. (Tr. 32). The ALJ relied on the State agency medical consultant who found plaintiff maintained the RFC for medium work. (*Id.*). The ALJ also relied upon the State agency psychological consultant who opined that plaintiff had mild restrictions in activities of daily living, mild difficulty maintaining social functioning and moderate difficulty in maintaining concentration, persistence and pace and that she retained the capacity to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings. (*Id.*). The ALJ considered these opinions and made accommodations for plaintiff's mental impairments with the limitations he included in the RFC. The medical evidence the ALJ cited was more important than the credibility determination. There is no reversible error.

Plaintiff next alleges the ALJ discredited her because her daily activities were inconsistent with her claimed limitations. (Pl. Br. at 13). She argues the ALJ finding that she drives, makes small purchases, performs household chores, babysits her grandchild and was working at a day care facility at the time of the hearing was a mischaracterization of the totality of the circumstances. Plaintiff argues she is very limited in performing these tasks and requires assistance and supervision in doing them. (*Id.*).

Plaintiff's argument, however, is more of a contention that the ALJ did not accept plaintiff's interpretation of what this evidence showed than an argument that there was no substantial evidence. Again, the ALJ gave weight to the State agency consultants' opinions, both medical and psychological. In so doing he considered plaintiff's testimony but did not find her to be entirely credible. (Tr. 32). The ALJ stated, "The medical evidence of record does not entirely support the credibility of the claimant's allegations regarding her mental and physical impairments...Based on the entire record, including the testimony of the claimant, the undersigned concludes that the evidence fails to support the claimant's assertions of total disability." (*Id.*). As discussed *supra*, this Court's analysis of plaintiff's credibility is of no benefit to plaintiff. Credibility determinations are reserved to the Commissioner and this Court may not reconsider those determinations *de novo* or substitute its judgment for the ALJ's. The credibility of a claimant's testimony is the sole province of the ALJ and must stand as long as it is supported by substantial evidence. Here the ALJ considered plaintiff's testimony and the medical evidence and resolved any conflicts against plaintiff. Such was within the province of the ALJ. Plaintiff has failed to demonstrate the ALJ's decision was unsupported by substantial evidence.[1]

### C. *ALJ Reliance on the Vocational Expert Testimony*

At step five of the sequential analysis, the ALJ relied upon VE testimony to find plaintiff not disabled. The ALJ determined jobs existed in significant numbers in the national economy

---

[1] The fact that plaintiff was still trying to work at a day care facility would seem to bolster her credibility but, as set out above, that is a determination for the ALJ.

which plaintiff could perform including those of maid/janitor, hand packager and inspector.[2] Plaintiff argues the VE testimony was in response to an incomplete hypothetical question because the hypothetical failed to incorporate all of plaintiff's physical and mental impairments and was defective and not supported by substantial evidence. (Pl. Br. at 13-14). The Court has previously addressed plaintiff's argument that the RFC was without evidentiary support. It is not necessary to repeat that previous analysis. The RFC was supported by substantial evidence.

Plaintiff further claims, however, that the ALJ erred when he relied on VE testimony because the ALJ failed to inquire of the VE, as required by SSR 00-4p, whether her testimony was consistent with the Dictionary of Occupational Titles (DOT). The Commissioner concedes the ALJ did not comply with the requirements of SSR 00-4p because he failed to ask the VE if her testimony conflicted with the DOT but notes that plaintiff's representative at the hearing failed to ask this question as well. (Comm'r Br. at 10). The Commissioner cites *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) for the proposition that, "...claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." Consequently, while the ALJ did not properly apply SSR 00-4p in this case, plaintiff has not demonstrated *how* the VE testimony was in conflict with the DOT. Plaintiff simply relies on the failure of the ALJ to make the inquiry. (Pl. Br. at 14, Pl. Reply at 3). Procedural perfection is not required, and the judgment should not be vacated if the substantial rights of plaintiff were not affected. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.

---

[2] Plaintiff avers and the Commissioner concedes that the VE testified that with a sit/stand option requirement the job of maid/janitor would be disqualified.

1989). Any error by the ALJ not asking the VE if her testimony conflicted with the DOT was at most harmless.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff PAULA SUE GRAVES not disabled and not entitled to disability benefits be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 24th day of February 2016.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United

States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).